1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| FREDERICK SILVER,<br><br>     Plaintiff,<br> v.<br><br>TEXAS OFFICE OF THE ATTORNEY GENERAL et al.,<br><br>     Defendant. | CASE NO. 3:25-cv-05712-DGE<br><br>ORDER DISMISSING AMENDED COMPLAINT (DKT. NO. 6) |

## I  INTRODUCTION

This matter comes before the Court sua sponte pursuant to 28 U.S.C. § 1915(a).

## II  BACKGROUND

Plaintiff, who is proceeding pro se and *in forma pauperis* ("IFP"), submitted a complaint

on August 18, 2025, against Defendant W. Kenneth Paxton in his official capacity as Attorney

General for the state of Texas.[1]  (Dkt. No. 5.)  Plaintiff amended his complaint on August 25. (Dkt No. 6.)

Plaintiff states while he has "never been adjudicated in a court of law in Texas regarding a valid, enforceable child support order," Defendant's office, acting through the Child Support Division, "has certified Plaintiff to HHS as owing a child support debt exceeding $2,500 without [a] valid underlying court order, [p]roviding due process notice, [or] [a]n opportunity to dispute the debt."  (*Id.* at 3.)  Plaintiff further alleges Defendant's office furnished the "alleged debt to one or more consumer reporting agencies."  (*Id.*)  Plaintiff apparently became aware of this when he was denied a U.S. passport, rental housing, credit applications, and employment opportunities "due to the negative tradeline."  (*Id.*)  Plaintiff states he has made "multiple efforts to dispute the debt through federal channels," but has never received verification of the alleged debt.  (*Id.*)  He claims Defendant continues to report the debt despite the fact it is "unvalidated, disputed, and not judicially enforceable."  (*Id.*)

Plaintiff asserts causes of action for (1) violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b); and (2) violation of his procedural due process rights under the Fourteenth Amendment and 42 U.S.C. § 1983.  (*Id.* at 4.)

### III    DISCUSSION

Any complaint filed by a person proceeding IFP pursuant to 28 U.S.C. § 1915(a) is subject to a mandatory and sua sponte review and dismissal by the Court to the extent it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary

---

[1] The claims against Defendant in his official capacity are properly treated as claims against the state of Texas.  *See L.A. Branch NAACP v. L.A. Unified Sch. Dist.*, 714 F.2d 949, 952 (9th Cir. 1983) (explaining that a lawsuit against the governor in their official capacity was "in essence, brought against the state entity of which the officer is an agent").

relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B); *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir.2001) ("[T]he provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners."); *Lopez v. Smith*, 203 F.3d 1122, 1126–1127 (9th Cir. 2000) (en banc).  "The standard for determining whether [a] Plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim."  *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915 "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)").

As currently formulated, Plaintiff's amended complaint is subject to sua sponte dismissal under 28 U.S.C. § 1915(e)(20)(B)(ii) because it fails to state a claim upon which relief may be granted.

**A.  FCRA Claim**

**1.  Information on Overdue Child Support Obligations Under § 1681s-1**

The FCRA requires consumer reporting agencies (CRAs) to include overdue child support reported by the state or local child support enforcement agency in consumer reports.  The relevant section specifically provides,

> *[n]otwithstanding any other provision of this subchapter*, a consumer reporting agency shall include in any consumer report furnished by the agency in accordance with section 1681b of this title, any information on the failure of the consumer to pay overdue support which—
>
> (1) is provided—
>
> (A) to the consumer reporting agency by a State or local child support enforcement agency; or
>
> (B) to the consumer reporting agency and verified by any local, State, or Federal Government agency; and

1

2
  (2) antedates the report by 7 years or less.

3
15 U.S.C. § 1681s-1 (emphasis added).  The FCRA defines a "State or local child support

4
enforcement agency" as a "State or local agency which administers a State or local program for

5
establishing and enforcing child support obligations."  *Id.* § 161a(j)(2).  The term "subchapter"

6
encompasses the entire FCRA.  *See Berry v. Experian Info. Sols., Inc.*, 115 F.4th 528, 536 (6th

7
Cir. 2024) (discussing *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 50–51

8
(2024) (explaining the definition of "person" within § 1681a applies throughout the FCRA

9
"subchapter")).  Though the Ninth Circuit has not analyzed § 1681s-1 in detail, the Sixth Circuit

10
interpreted the section as requiring CRAs to include all "information they receive from a

11
government agency on a consumer's failure to pay [child] support, regardless of other FCRA

12
requirements."  *Berry*, 115 F.4th at 535.

13
       Plaintiff alleges, without additional facts, that he has "never been adjudicated in a court

14
of law in Texas regarding a valid, enforceable child support order." (Dkt. No. 6 at 3.)

15
Nevertheless, Defendant's office apparently "furnished [the] alleged debt to one or more

16
consumer reporting agencies."[2]  (*Id.*)  Assuming the truth of Plaintiff's allegations, Defendant's

17
office acted pursuant to § 1681s-1 when it reported Plaintiff's alleged outstanding debt to a

18
consumer reporting agency and was required to do so notwithstanding any other provisions of

19
the FCRA.  (*Id.*); 15 U.S.C. § 1681s-1.  While not binding, the Court adopts the reasoning from

20
*Berry* that while CRAs are required to report information from child support agencies, they are

21

22
[2] The Child Support Division (referred to as the Title IV-D Agency) falls under the umbrella of
the Attorney General's Office in Texas.  A Texas Family Code provision requires the Child

23
Support Division to provide consumer reporting agencies with information regarding the amount
of child support owed and the amount paid by the obligor in a child support case.  Tex. Fam.

24
Code § 231.114(a).

not as a matter of law protected from other claims under the FCRA for having done so.  *See Watkins v. Experian Info. Sols., Inc.*, Civil Action No: 23-20860 (SDW) (SDA), 2025 WL 79698, at *4 (D.N.J. Jan. 13, 2025) (adopting reasoning from *Berry*, acknowledging there are situations in which § 1681s-1's impact is unclear, and analyzing its potential clash with §§ 1681e(b) and 1681i).  The Court thus proceeds to a traditional analysis of Plaintiff's claim under § 1681s-2(b).

### 2. Responsibilities of Furnishers of Information to Consumer Reporting Agencies Under § 1681s-2(b)

The Ninth Circuit permits private enforcement under 15 U.S.C. § 1681s-2(b).  *See Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1059–1060 (9th Cir. 2002).  However, "Congress did provide a filtering mechanism in § 1681s–2(b) by making the disputatious consumer notify a CRA and setting up the CRA to receive notice of the investigation by the furnisher." *Id.* at 1060.  The relevant portion of the statute provides:

**(b) Duties of furnishers of information upon notice of dispute**

(1) In general

After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—

(i)     modify that item of information;

(ii)    delete that item of information; or

(iii)   permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1).  The term "person" is defined to mean "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity."  15 U.S.C. § 1681a(b).  Further, the term "consumer reporting agency" means "any person which . . . regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties. . . ."  15 U.S.C. § 1681a(f).

As an initial matter, the Court must determine whether Defendant qualifies as a "furnisher" of consumer information under the FCRA.  "Furnisher" is defined by regulation as "an entity that furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report."  12 C.F.R. § 1022.41(c).

Plaintiff alleges Defendant is a "furnisher" of information regarding child support debts to consumer reporting agencies. (Dkt. No. 6 at 2.)  For purposes of this order, the Court agrees Plaintiff has sufficiently alleged Defendant is a "furnisher" within the regulatory definition.

Courts in this circuit have distilled the elements of a claim under § 1681s-2(b) against a furnisher to include the following: "(1) [Plaintiff] found an inaccuracy in [their] credit report; (2) [they] notified a [CRA]; (3) the [CRA] notified the furnisher of the information about the dispute; and (4) the furnisher failed to investigate the inaccuracies or otherwise failed to comply

with the requirements of" Section 1681s-2(b).  *King v. PennyMac Loan Servs., LLC*, No. 4:24-CV-05002-MKD, 2024 WL 2064056, at \*2 (E.D. Wash. May 8, 2024) (quoting *Biggs v. Experian Info. Sols., Inc.*, 209 F. Supp. 3d 1142, 1144 (N.D. Cal. 2016), and collecting cases).  "Concerning the second element, it is well-established that proof of 'a formal notice of consumer dispute from a [CRA]' is required to prove a furnisher's FCRA violation."  *Id.* (quoting *Lawrence v. Paramount Residential Mortg. Grp., Inc.*, No. 19-CV-2103, 2021 WL 3578679, at \*7 (D. Or. May 4, 2021)).

Here, Plaintiff does not plead he found an inaccuracy in his credit report; rather, he claims he learned of the reporting when he was denied a U.S. passport, housing, credit applications, and employment opportunities.  (Dkt. No. 6 at 3.)  And although Plaintiff asserts he "disputed the reported debt with one or more CRAs" (*id.* at 4), Plaintiff does not identify facts establishing a CRA issued a consumer dispute notice to Defendant as required by § 1681s-2(b).  *See King*, 2024 WL 2064056, at \*2 (citation omitted).  Plaintiff does plead, albeit in conclusory fashion, that Defendant received notice of the dispute from a CRA and that the Defendant failed to conduct a reasonable investigation, correct inaccurate information, or notify the CRA of a resolution.  (*Id.*)  However, he offers no specific facts identifying when, where, or how this notice and failure to investigate occurred.  Without more, these allegations are not facts entitled to a presumption of truth.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**B.  42 U.S.C. § 1983 Claim**

A party that claims federal constitutional violations against the government must bring suit under 42 U.S.C. § 1983.  *See Azul-Pacifico, Inc. v. City of L.A.*, 973 F.2d 704, 705 (9th Cir. 1992).  To state a claim under § 1983, a plaintiff must show (1) he or she suffered a violation of rights protected by the Constitution or created by federal statute; and (2) the violation was

proximately caused by a person acting under color of state law.  *See Crumpton v. Gates*, 947

F.2d 1418, 1420 (9th Cir. 1991).

### 1. Sovereign Immunity

A suit against a state official, in their official capacity, is not a suit against the official but

rather is a suit against the official's state.  *Brandon v. Holt*, 469 U.S. 464, 471 (1985).  "The

Eleventh Amendment prohibits a private party from suing a nonconsenting state or its agencies

in federal court" absent explicit abrogation of the state's sovereign immunity by Congress.

*Hason v. Med. Bd. of Cal.*, 279 F.3d 1167, 1170 (9th Cir. 2002).  It is clearly established law that

42 U.S.C § 1983 "does not provide a federal forum for litigants who seek a remedy against a

State for alleged deprivations of civil liberties.  The Eleventh Amendment bars such suits unless

the State has waived its immunity . . . or unless Congress has exercised its undoubted power

under § 5 of the Fourteenth Amendment to override that immunity."  *Will v. Mich. Dep't of State

Police*, 491 U.S. 58, 66 (1989).  Under the *Ex Parte Young* doctrine, sovereign immunity also

does not apply when the plaintiff chooses to sue a state official in their official capacity for

prospective injunctive relief only.  *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 73 (1996).

Defendant is shielded from liability in this lawsuit by sovereign immunity.  There is no

indication the state of Texas has waived its immunity, nor that Congress has abrogated it in this

context.  And while Plaintiff invokes *Ex Parte Young* in claiming he is only seeking prospective

relief (*see* Dkt. No. 6 at 2), the *Ex Parte Young* exception to sovereign immunity only applies so

long as there is a causal connection between the state official and the alleged violation of federal

law.  *Agensys, Inc. v. Regents of the Univ. of Cal.*, Case No. CV 24-3961-JFW(PDx), 2024 WL

5679166, at *6 (C.D. Cal. Oct. 22, 2024) (citing *Pennington Seed, Inc. v. Produce Exch. No. 299*,

457 F.3d 1334, 1342 (Fed Cir. 2006); *see also McRorie v. Shimoda*, 795 F.2d 780, 783–784 (9th

Cir. 1986).  There is no such connection here.  Plaintiff alleges only that Defendant "certif[ied] Plaintiff for passport denial and/or report[ed] debt to CRAs without a valid court order, notice, or hearing."  (*See id.* at 4).  Without any factual allegations to support it, such conclusory allegations are insufficient.  *See Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021) ("[C]ourts need not accept as true legal conclusions or '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements'") (*quoting Ashcroft*, 556 U.S. at 663).

### 2.  Procedural Due Process

Even assuming Defendant is not immune from suit in this matter, Plaintiff cannot sustain a claim for a procedural due process violation.  To plead a procedural due process violation, a plaintiff must prove "two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections."  *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).

### a.  Passport

Plaintiff fails to identify facts that support the conclusion that Defendant has authority to issue or deny a passport to a person.  Indeed, it is the federal government (specifically, the Bureau of Consular Affairs at the U.S. Department of State) that issues passports.  *See* 22 C.F.R. § 51.1 *et seq.*  As the Attorney General of Texas, Defendant lacks authority to issue or deny issuance of a United States passport to Plaintiff.  Plaintiff thus cannot establish that Defendant deprived him of a protected liberty or property interest, and any process for applying for a passport or appealing the denial of the issuance of a passport lies exclusively with the Department of State.

1

2

### b. Credit Report

Plaintiff also fails to identify facts indicating he has a protected liberty or property interest in a credit report. Plaintiff cites no authority stating that an individual has a constitutionally protected interest in his credit rating. At least one district court in this circuit and others across the country have held that injuries to an individual's credit rating are not cognizable under § 1983. *See Taylor v. Def. Fin. & Acct. Serv.*, No. CIV. 2:12–2466-WBS-DAD, 2013 WL 28820, at *13 (E.D. Cal. Jan. 2, 2014) (explaining no Ninth Circuit case has recognized a "freestanding property interest in one's credit rating"); *Geiling v. Wirt Fin. Servs., Inc.*, No. 14–11027, 2014 WL 8473822, at *73 (E.D. Mich. Dec. 31, 2014) ("[n]or can Plaintiffs show that they had a protected property interest in their credit reports or loan files"); *Perkins v. Va. Dep't of Corr.*, No. 1:21cv919 (RDA/TCB), 2022 WL 2073089, at *2 n.6 (E.D. Va. May 4, 2022) (discussing that a credit rating is an aspect of reputation, and an injury to reputation alone "does not implicate a protected liberty interest"); *Sare v. Cent. Collection Unit,* Civil No.: 8:24-cv-03637-JRR, 2025 WL 2208173, at *9 n.10 (D. Md. Aug. 4, 2025) (same). This Court declines to deviate from other district courts on this issue and concludes Plaintiff has not established he has a constitutionally protected interest in his credit report.

### C. Denial of Leave to Amend

The Ninth Circuit has instructed that while district courts should generally grant leave to amend, even if no request is made, a district court does not have to do so if it determines the pleadings could not possibly be cured by the allegation of other facts. *See Lopez v. Smith*, 203 FD.3d 1122, 1130 (9th Cir. 2000) (en banc); *see also Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (holding that a district court does not err in denying leave to amend if amendment would be futile).

As to Plaintiff's procedural due process violation claim, the Court concludes it would be futile, and therefore unnecessary, to provide Plaintiff another opportunity to amend his complaint because the dismissal of this claim is based on deficiencies that cannot be cured through the addition of new facts. Defendant has no authority to issue or deny issuance of a United States passport. Nor could new alleged facts create property or liberty interests in a credit report where such interests do not exist. The Court thus concludes Plaintiff cannot cure the "basic flaw[s]" in his pleading and dismisses Plaintiff's due process violation claim without leave to amend. *See Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1088 (9th Cir. 2002).

## IV    CONCLUSION

Accordingly, the Court DISMISSES Plaintiff's amended complaint under 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff's procedural due process violation claim is DISMISSED with prejudice. However, Plaintiff is granted leave to amend his complaint to attempt to cure the deficiencies identified herein related to his FCRA claim. Any amended complaint shall be filed no later than **September 22, 2025**.

The Clerk is directed to calendar this event.

Dated this 8th day of September 2025.

David G. Estudillo
United States District Judge